COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:  Judges Beales, McCullough and O'Brien
Argued at Fredericksburg, Virginia

RONALD JAMES EVERETT

v.      Record No. 2299-14-4

ASLI CAROME,
 F/K/A ASLI EVERETT

OPINION BY
JUDGE RANDOLPH A. BEALES
AUGUST 11, 2015

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Samuel A. Leven (Roy J. Baldwin; The Baldwin Law Firm, LLC, on
briefs), for appellant.

David D. Masterman (Masterman Krogmann P.C., on brief), for
appellee.

On November 17, 2014, the Circuit Court for the City of Alexandria entered an order

granting a motion *in limine* filed by Asli Carome (wife) in response to a motion to modify child

support filed by Ronald Everett (husband). As a result of the court's ruling on the motion *in limine*,

husband would be obligated to continue to pay at least $5,000 per month for support of the parties'

two children. Realizing that the court's ruling on the motion *in limine* predetermined the overall

outcome of the case, the parties decided not to proceed to a further hearing before the trial judge.

On appeal, husband challenges the circuit court's ruling on the motion *in limine*. For the following

reasons, we affirm in part, reverse in part, and remand to the circuit court for further proceedings

consistent with this opinion.

I. BACKGROUND

Husband and wife were divorced on June 24, 2005 by a decree which ratified, affirmed, and

incorporated, but did not merge, the parties' May 22, 2004 property settlement agreement (PSA).

Per the PSA, husband was to pay wife child support for their two children – their son R.E., born January 26, 1995, and their daughter S.E., born February 17, 1999.  The relevant portion of the PSA's child support provision stated as follows:

> (a)  In recognition of the Children's living expenses, including two private-school tuition, summer camps, work-related child care, transportation, insurances, in addition to food, clothing and housing, Husband agrees to pay Wife the sum of Five Thousand and 00/100 ($5,000) per month as and for child support commencing July 1, 2004, and continuing until each child graduates from college. . . .  The parties acknowledge and agree that this amount of child support and its duration are an upward adjustment from Virginia's child support guidelines.

> \*　　\*　　\*　　\*　　\*　　\*　　\*

> (c)  In the event that Husband ever seeks a downward adjustment in his child support obligations, Wife shall be entitled to pursue her marital share of Husband's business interests and to pursue spousal support, both of which were waived to obtain child support beyond Virginia's guidelines.

A separate section of the PSA provided that the parties would share equally all expenses of the children's undergraduate educations, including tuition as well as room and board.  Another provision of the PSA also stated that "in the event Husband seeks a downward adjustment in his child support obligations, he shall be responsible for all of Wife's attorney's fees and costs."

On November 20, 2013, husband filed a motion to modify child support based on what he alleged to be material changes in circumstances.  Husband noted that, at this point, the parties' son R.E. was eighteen years old and in college, and therefore the parties were evenly splitting his college costs, pursuant to the PSA.  Because R.E. had reached the age of majority and was living away from home, his costs of living and child care costs mentioned in the PSA either were no longer being incurred, or were already being paid for by both parents pursuant to Section 14, the college expenses provision of the PSA.  Husband also noted that wife no longer incurred child care costs for their daughter S.E., who was fourteen years old at the time he filed his motion to

modify child support, and that S.E.'s private school tuition expense had been greatly reduced because she had received a scholarship. Finally, husband noted that wife had enjoyed a significant increase in her income.

On April 30, 2014, wife moved to dismiss husband's motion to modify child support. Wife first argued that the plain terms of the PSA required husband to pay an indivisible monthly sum of $5,000 until each child had graduated college and that the court could not modify this amount when the parties had made their intentions clear in the PSA. Wife also argued that even if an exception to this rule allowed the court to modify the amount payable for *S.E.'s* support, it had no jurisdiction to modify the amount due for *R.E.'s* support because he had already turned eighteen and graduated from high school. The court held a hearing on July 23, 2014, and granted wife's motion to dismiss husband's motion to modify child support as to the parties' son, R.E., because R.E.'s reaching the age of majority divested the trial court of jurisdiction to modify his portion of the support award. However, the court allowed the matter to proceed to determine whether the support obligation for S.E. should be reduced and set a date for a subsequent hearing.

On September 12, 2014, wife filed a motion *in limine* to exclude any evidence that would allow husband to contradict the PSA's requirement that he pay a total of $5,000 each month. Wife argued that, even if the amount of support attributable to the parties' daughter, S.E., could be reduced, husband would need to make up for such a reduction by increasing his support payments attributable to R.E., so that husband's monthly payments still had to total at least $5,000. Wife further argued that the PSA was clear and unambiguous as to this requirement, and therefore the parol evidence rule prohibited husband from introducing any evidence that would contradict this reading of the agreement. Such parol evidence would have included, for example, evidence that the full amount payable each month could in fact total less than $5,000, evidence

- 3 -

that the parties intended the monthly amount to be divisible between the two children, or evidence of the children's actual needs and expenses. Based on her argument, wife concluded that it would not make sense to continue to litigate the matter and accrue legal fees because husband could not be found to owe less than $5,000 per month (regardless of how that amount was divided between the children), and, therefore, she urged the court to dismiss husband's motion to modify the support award.

The trial court held a hearing on wife's motion *in limine* on September 24, 2014. The court granted wife's motion *in limine* but declined to rule at the hearing on her request to dismiss the matter outright, leaving husband the option to set another hearing date.[1] The final order prepared by the parties and issued by the court, however, dismissed that matter, stating, "Because [husband] agrees that he cannot prevail on his Motion on November 19, 2014, due to the above rulings, [husband's] motion to modify child support be and hereby is DISMISSED." Husband noted his objection.

## II. ANALYSIS

Husband raises five assignments of error on appeal. The fourth and fifth assignments of error relate to husband's argument that the trial court erred in determining that it did not have jurisdiction to modify support for the parties' adult son, R.E. The other three assignments of error allege that the trial court erred in granting wife's motion *in limine* and determining that husband's total support obligation would not total less than $5,000 per month. Wife, meanwhile, argues in response that husband is barred from challenging the trial court's ruling on appeal because he failed to preserve his objection. Wife also requests an award of attorney's fees and costs incurred in this appeal. We discuss these arguments separately.

---

[1] The court did, however, state that husband and his counsel "ought to think carefully" about moving forward with the case because husband's monthly obligation could not be reduced below $5,000.

- 4 -

### A. PRESERVATION OF HUSBAND'S OBJECTION

As an initial matter, we must determine whether husband's appeal is procedurally barred for supposedly failing to raise and preserve his objection to the trial court's ruling on the motion *in limine*. Rule 5A:18 states that no ruling of the trial court "will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Wife observes that, at the September 24, 2014 hearing, the trial court explicitly did not dismiss husband's motion to modify child support when it reached its decision to grant wife's motion *in limine*. Instead, she states that husband willingly consented to dismissal of his motion when he endorsed the court's final order, entered on November 17, 2014. Wife argues that, because husband agreed to entry of the order, he failed to preserve an objection to the trial court's ruling. She asserts that, instead, husband invited error by the trial court and has approbated and reprobated, thereby barring us from considering the merits of his appeal. See Saunders v. Commonwealth, 211 Va. 399, 400, 177 S.E.2d 637, 638 (1970); Batts v. Commonwealth, 30 Va. App. 1, 11, 515 S.E.2d 307, 312 (1999).

This argument, however, fails to take several factors into account. First, husband's counsel endorsed the final order "seen and objected to for the reasons set forth" in his pleadings and arguments in open court. It would not make sense to apply Rule 5A:18 here, given that husband noted his reasoned objection on the order itself. We also disagree with wife's contention that, by agreeing to dismissal, husband invited error by the trial court. Husband clearly and consistently argued throughout the proceedings below that the amount of his child support obligation could and should be reduced. The trial court could not have been in doubt about what husband's arguments or positions were in this case. However, it is clear from the context of the record, including the trial court's warning that husband "think carefully" about

proceeding further, that husband agreed to dismissal in order to avoid the time and cost of a hearing that would only result in his paying the same amount – or more – in child support. Husband has certainly not invited error or taken a contrary position on appeal, but instead has simply acknowledged that, if the trial court's decisions to partially grant wife's first motion to dismiss and to grant her motion *in limine* stand, then there was simply no point in continuing the litigation in the circuit court, as the court actually implied to him. Accordingly, because he properly preserved his argument for appeal, we will consider the merits of husband's appeal.

### B. MERITS

#### 1. STANDARD OF REVIEW

Husband alleges error in the trial court's interpretation of statutes and case law relating to its jurisdiction, as well as its reading of the parties' PSA. "A question regarding jurisdiction is a matter of law. 'We review the trial court's statutory interpretations and legal conclusions *de novo*.'" Craig v. Craig, 59 Va. App. 527, 539, 721 S.E.2d 24, 29 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004)). Likewise, "[w]e review a trial court's construction of a property settlement agreement under the same rules applicable to decisions reviewing contracts." Dailey v. Dailey, 59 Va. App. 734, 739, 722 S.E.2d 321, 324 (2012) (citing Bailey v. Bailey, 54 Va. App. 209, 215, 677 S.E.2d 56, 59 (2009)). Thus, the trial court's reading of the parties' PSA is also a question of law which we review *de novo*. Id.

#### 2. JURISDICTION TO MODIFY R.E.'S SUPPORT

Husband's fourth and fifth assignments of error allege that the trial court erred in finding that it did not have jurisdiction to modify support for the parties' adult son, R.E. Code § 20-108 states that a court may modify its decree of child support "as the circumstances of the parents and the benefit of the children may require." The Supreme Court further explained this jurisdictional issue in its per curiam opinion in Cutshaw v. Cutshaw, 220 Va. 638, 261 S.E.2d 52

(1979) (per curiam).  The Supreme Court noted in Cutshaw that, generally, parents only have a legal obligation to support their children while the children are minors, but that they may contract to extend their child support obligations beyond the children's minority.  Id. at 641, 261 S.E.2d at 54.  However, the Court further stated that "where such contracts are incorporated into support decrees by a divorce court, they can only be modified by that court to the extent of its jurisdiction."  Id.  The Court then observed that "the jurisdiction of a court to provide for child support pursuant to a divorce is purely statutory" and that the relevant statutes, Code §§ 20-103 through 20-109.1, only provide for support of minor children.[2]  Id.  Based on this reading of the statutes, the Supreme Court concluded that "[o]nce the child reaches majority, the jurisdiction of the divorce court to provide for his support and maintenance terminates *unless otherwise provided by agreement incorporated into the divorce decree*."  Id. (emphasis added).

Here, the trial court applied Cutshaw and determined that it did not have jurisdiction to modify any portion of the total support award that was attributable to R.E.'s support because R.E. is no longer a minor.  Husband first contends that Cutshaw's general prohibition against modifying support for a child who has reached majority age does not apply here because the parties' PSA grants the court jurisdiction to modify the support after the parties' children have reached adulthood.  Husband points to the provisions of the PSA that provide a remedy to wife in the event of husband's petitioning the court to reduce his child support payments – namely, attorney's fees and the freedom to pursue spousal support and her marital share of husband's

---

[2] Code § 20-124.2(C), which was enacted after Cutshaw was decided, gives the courts authority to provide for support of children who are older than eighteen in some circumstances, including children who still live at home, are not self-supporting, and are still in high school, as well as some instances in which the child cannot support himself due to disability.  This extends the outer bounds of the courts' jurisdiction somewhat beyond the age of majority, and to that extent the statute supersedes Cutshaw.  See Mayer v. Corso-Mayer, 62 Va. App. 713, 724-25 & n.5, 753 S.E.2d 263, 268-69 & n.5 (2014).  For sake of simplicity, we will refer in this opinion to the time period up to the cutoff of Code § 20-124.2 as a child's "minority."

business interests – as proof that the parties' agreement contemplated a potential adjustment of child support. Husband further argues that the agreement does not forbid modification of support for a child who is no longer a minor, and asserts that this unambiguously extends the trial court's jurisdiction to modify support for the parties' adult son, or at the very least, is ambiguous on this issue, and therefore requires the admission of parol evidence to determine the parties' intent.

This argument is not persuasive. The Supreme Court's decision in Cutshaw makes clear that a court cannot modify support for a child who is no longer a minor simply because the agreement requires payment of support after the child has reached the age of majority. Id.; see also Goldin v. Goldin, 34 Va. App. 95, 106, 538 S.E.2d 326, 331 (2000) ("The divorce court's jurisdiction over the child is eliminated *ipso facto* when the child reaches his majority."). Because the court's general authority to modify child support is limited by statute, there must be something in the agreement that clearly allows for modification of child support after the child turns eighteen or graduates from high school. There is no such language in the PSA here, and we will not assume that the parties intended to allow for modification after a child reaches majority age without specific language allowing for such modification. In short, we cannot read additional language into the agreement that is not already there. Rutledge v. Rutledge, 45 Va. App. 56, 63-64, 608 S.E.2d 504, 508 (2005).

The provisions that provide remedies to wife if husband seeks a reduction in child support do not require a different result. Although husband is correct to note that these provisions indicate the parties' intent to allow husband to petition the court for a modification of support, they do not state that the court may modify a child's support after that child reaches adulthood. "'One of the basic rules of construction of contracts is that the law in force at the date of making a contract determines the rights of the parties under the contract.'" Goldin, 34

- 8 -

Va. App. at 105, 538 S.E.2d at 331 (quoting Paul v. Paul, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974)). We must assume that the parties reached their agreement with an understanding of the law in place at the time of its making, including the Supreme Court's decision in Cutshaw. Therefore, we can only find that an agreement grants the circuit court authority to modify the support award outside of its statutory jurisdiction if the language of the agreement makes this clear. In this case, the PSA does not.

Furthermore, husband's argument that Cutshaw was wrongly decided is beyond this Court's purview. "[W]e are bound by decisions of the Supreme Court of Virginia and are without authority to overrule" them. Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991). If husband wishes to argue that the Supreme Court wrongly decided a case, he must do so in that Court. For the foregoing reasons, we affirm the trial court's conclusion that it did not have jurisdiction to modify support for R.E.

### 3. ABILITY TO MODIFY S.E.'S SUPPORT AND THE TOTAL SUPPORT OBLIGATION

Husband's other three assignments of error allege that the trial court erred in granting wife's motion *in limine*. Husband contends that, by ruling that he could not introduce evidence that the total support obligation could be divisible between the two children or could amount to less than $5,000 per month, the trial court violated legal principles set out in Kelley v. Kelley, 248 Va. 295, 449 S.E.2d 55 (1994), in Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001) (en banc), and in Cutshaw. In Kelley, the Supreme Court considered a provision of the parties' PSA that had been incorporated into the divorce decree and that provided that the husband would never have to pay the wife child support. Kelley, 248 Va. at 296-97, 449 S.E.2d at 55. The agreement further stated that the wife had promised never to petition for an award of child support – and that, if she ever did and a court granted a support award, the wife would reimburse the husband and hold him harmless for any amounts he would be directed to pay. Id. at 297, 449

- 9 -

S.E.2d at 55-56. The Supreme Court first observed that, in a divorce suit, a trial court does not lose jurisdiction over its decrees pursuant to Rule 1:1, which normally divests the trial court of jurisdiction after twenty-one days from entry of a final order, but instead "retains continuing jurisdiction to change or modify its decree relating to the maintenance and support of minor children." Id. at 298, 449 S.E.2d at 56. The Court also stated that "parents cannot contract away their children's rights to support nor can a court be precluded by agreement from exercising its power to decree child support." Id. It found that the PSA provision in question had the effect of diminishing the court's power to decree child support and therefore was void. Id.

This Court expanded on the issue of the parties' ability to preclude judicial modification of child support in Shoup. There, the Court considered an agreement between the parties that specified a set amount due each month from the husband to the wife for the support of their three children. Shoup, 37 Va. App. at 244 n.1, 556 S.E.2d at 785 n.1. The husband was required to continue making these monthly payments "until each child dies, marries, becomes self-supporting, reaches the age of eighteen (18) years or otherwise becomes emancipated . . . ." Id. The agreement also provided that, in the event of a change in circumstances, the parties would determine the amount of support due by following the statutory child support guidelines along with any other relevant statutes and case law. Id. Pursuant to the agreement, the husband unilaterally reduced his support payments by one-third after the oldest of the three children graduated from high school, and he did so again after the second child graduated. Id. at 245-46, 556 S.E.2d at 786.

The Court reviewed the body of law concerned with the parties' right to contract regarding child support and noted that one of the very few exceptions to this broad right was that "the parties may not, by agreement, prevent the court from exercising its power to change, modify, or enforce its decree concerning the custody and maintenance of minor children." Id. at

- 10 -

250, 556 S.E.2d at 788. The Court then found that the relevant provisions of the agreement were valid because they "[did] not purport to circumvent the court's jurisdiction to enforce support, modify support, or intervene upon petition of either party," nor did the agreement "purport to 'contract away' the children's right to support from either parent." Id. at 252, 556 S.E.2d at 789. The Court then reversed the trial court's award of arrearages accrued when the husband had proportionately reduced the amount of support payments for each emancipated child. Id. at 253-54, 556 S.E.2d at 790.

We agree with husband that the trial court's reading of the parties' PSA here creates an untenable catch-22 that results in violation of either the holding of Cutshaw or of the holdings in Kelley and Shoup. If the PSA is read to require an unchangeable support obligation of $5,000 per month, regardless of circumstances, then one of two situations results. First, it could result in the trial court's potentially allowing a downward adjustment of the minor child S.E.'s support, in which case R.E.'s support must be correspondingly increased, if wife's argument prevails. This outcome, however, would contradict the holding in Cutshaw that the court has no authority to adjust the support due to a child who is no longer a minor. Alternatively, if R.E.'s support is no longer modifiable, then the only way to guarantee that the monthly support obligation stays at $5,000 is to also find that S.E.'s support cannot be modified. This outcome would be in direct contravention of the decisions in Kelley and Shoup, which establish that a PSA cannot prevent a court from exercising its jurisdiction to modify a support obligation due to a minor child.

We also agree with husband that the trial court's interpretation of the parties' PSA was erroneous. There is nothing in the PSA that unambiguously states that the amount of support cannot be apportioned between the parties' two children – or that support must remain fixed at $5,000 per month even if modification in child support for the minor child may otherwise be warranted. In fact, the PSA clearly contemplates that husband could seek a downward

modification in his child support obligation. This is evidenced by the provisions that allow for wife to seek spousal support, her marital share of husband's business interests, and attorney's fees "[i]n the event that Husband ever seeks a downward adjustment in his child support obligations." There would be no point in providing for this contingency if the total monthly obligation must still remain fixed at $5,000 per month (or more) simply because one of the children no longer remains a minor.

In addition, we should presume that, at the time they entered into the PSA, the parties had "intended that which renders their agreement valid and capable of performance and not that which renders it void and impossible of execution." Taylor v. Taylor, 176 Va. 413, 425, 11 S.E.2d 587, 591 (1940). Under this principle of contract interpretation, we find that the PSA must be read in a manner which allows for apportionment of the support award between the two children, and which allows for not just an upward but also a downward modification of the $5,000 monthly obligation so long as the adjustment is warranted by a change in circumstances and at least one child is still a minor. [3] For these reasons, the trial court erred in applying the parol evidence rule and in granting the motion *in limine*.

## C. ATTORNEY'S FEES

Wife requests an award of attorney's fees and costs incurred in this appeal. The PSA covers this issue and is, therefore, controlling. It states that husband is to pay "all of Wife's attorney's fees and costs" if he seeks a downward adjustment in support. The requirement that husband pay all of wife's attorney's fees and costs is not dependent on who prevails or on the outcome of the case. Husband argues that this provision is unconscionable because it effectively

---

[3] Although not necessary to our holding, we also note that wife's reading of the PSA would lead to the absurd result of *increasing* R.E.'s portion of the support award if decreasing S.E.'s portion, even though both parents are required to pay for R.E.'s college expenses, which include room and board.

takes away the trial court's jurisdiction to modify support by acting as a barrier to instituting a suit for modification. This argument, however, is not persuasive. The parties' agreement, including the provisions on child support and attorney's fees and costs, is the result of a bargain between husband and wife. The PSA is clear that wife waived spousal support and her marital share of husband's business interests in exchange for a level of child support that exceeded the statutory guidelines.

Presumably, this bargain was made with the assumption that husband could seek to modify his child support obligation, but that, in doing so, wife would receive something in exchange. In this case, that is her ability to pursue assets and spousal support that were previously unavailable – along with recovery of attorney's fees and costs during the litigation of these issues. There is no indication that husband was pressured into this portion of the agreement, and there is no reason to find it invalid just because it now presents husband with a financial loss. In addition, because we affirm in part, and because the portion of the trial court's ruling that we reverse was not obviously in error, it was not unreasonable for wife to have incurred attorney's fees and costs on this appeal in an attempt to have the trial court's ruling affirmed. We therefore grant wife's request for attorney's fees and costs incurred during this appeal.

### III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's determination that it did not have jurisdiction to modify the portion of husband's child support obligation attributable to the parties' adult son, R.E. However, we reverse the circuit court's decision to grant wife's motion *in limine*. We find that husband's total monthly child support obligation may be apportioned between the parties' two children and that the total amount of support may be adjusted downward (as well as upward) so long as the parties' daughter, S.E., is still a minor. On remand,

- 13 -

the circuit court is instructed to take evidence necessary to determine (1) how the total amount of child support should be divided between the parties' two children, and (2) whether there have been any material changes in circumstances that would constitute a reason for reducing the child support for S.E. – thereby also reducing husband's total monthly child support obligation. In addition, because we grant wife's request for her attorney's fees and costs incurred in this appeal, the circuit court is also instructed to calculate a reasonable award of attorney's fees and costs incurred by wife on appeal.

Affirmed, in part,
reversed, in part, and remanded.
